IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                            |   |                        |
|----------------------------|---|------------------------|
| SHERRY EUBANKS,            | * |                        |
|      Plaintiff,            | * |                        |
|                            | * |                        |
|      v.                    | * | CIVIL NO.: WDQ-15-513  |
|                            | * |                        |
| MERCY MEDICAL CENTER, INC.,| * |                        |
|      Defendant.            | * |                        |
|                            | * |                        |

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

Sherry Eubanks sued Mercy Medical Center, Inc. ("Mercy"),
for violations of the Americans with Disabilities Act ("ADA")[1]
and state law employment discrimination.  Pending is Mercy's
motion to dismiss the complaint.  No hearing is necessary.
Local Rule 105.6 (D. Md. 2014).  For the following reasons,
Mercy's motion will be granted; however, Eubanks will have 30
days to amend the complaint before her claims are dismissed with
prejudice.

---

[1] 42 U.S.C. §§ 12-101 *et seq*. (2012).  Congress amended that ADA
with the passage of the ADA Amendments Act of 2008.  Pub. L. No.
110-235, 122 Stat. 3553.

I.   Background[2]

In January 2006, Eubanks began working for Mercy as a medical assistant.   ECF No. 2 (hereinafter, "Compl.") at ¶ 9. Eubanks's "most recent performance appraisal" stated that she worked well with doctors and "met the needs of her patients." *Id.* at ¶ 66.

"In the spring of 2007, [Eubanks] was treated for and diagnosed with allergic rhinitis."   Id. at ¶ 10.   Eubank's doctor "noted a history of nasal itching, sneezing, congestion, rhinorrhea and post nasal drip, with headaches."   Id. at ¶ 11. Eubanks had multiple "large wheals"[3] on her arms, "with redness and itching as a result of [the] testing performed."   Id. at ¶ 12.

The doctor performed "hyposensitization" on Eubanks "in order to both alleviate [her] allergic symptoms as well as to determine the presence of allegories."   *Id.* at ¶ 13.   The possible risks of the procedure included "skin rash, bronchial

---

[2] For the motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). In reviewing the motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[3] A "wheal" is a raised, itchy area of skin.

asthma, anaphylactic shock, delayed response, diarrhea, allergic reaction, headache, arm reaction, death." *Id*. at ¶ 14.

In 2009, Mercy requested that its staff receive flu vaccinations. *See* Compl. at ¶¶ 15-16. Eubanks declined to receive the vaccine and signed a waiver to that effect. *Id*. at ¶ 15. "No documentation was required by Mercy in order to decline the vaccine." *Id*. at ¶ 16. In 2010, Eubanks again declined to receive the vaccine, and Mercy required no documentation in support of her request. *Id*. at ¶ 17.

On September 26, 2010, Eubanks "presented at Patient First in Lutherville with a complaint of an allergic reaction." *Id*. at ¶ 18. Doctors found "multiple areas of erythema,"[4] which "was asymmetric, and . . . wheal like . . . ." *Id*. at ¶ 19. The erythema affected Eubanks's arms, upper back, left upper forehead, and neck. *Id*. "[Eubanks] was warned that if she suffered from severe chest pain or shortness of breath, she should present to the emergency room immediately." *Id*. at ¶ 20.

In 2011, Mercy changed its flu vaccine policy, requiring every employee to receive the vaccine. Compl. at ¶ 21. An employee could be excused from the policy "for a religious restriction or a medical contraindication." *Id*. at ¶ 22. In order to be excused from the vaccine, Eubanks submitted to Martha Markaline, Mercy's practice manager, "medical

---

[4] Erythema is abnormal skin redness.

3

documentation justifying the exemption from receiving the vaccination, including a 'script' from [Eubanks's] physician . . . dated November 15, 2011, indicating that [she] had 'severe allergies' and 'no flu shots.'" *Id*. at ¶¶ 23-24. "No further requests or explanation were asked of [Eubanks] by Mercy with regard to the influenza vaccination for that year." *Id*. at ¶ 25.

During the 2012 flu vaccination season, Eubanks was given the informed consent form for the vaccination. Compl. at ¶ 27. The informed consent form warned that "persons who are allergic to eggs, chicken feathers, or chicken dander should not receive this vaccine until they have consulted their personal physicians." *Id*. at ¶ 28.

On November 26, 2012, Markaline told Eubanks that her previous documentation would be sufficient to excuse her from the 2012 vaccination. Id. at ¶ 29. On November 27, 2012, however, Markaline informed Eubanks that the prior documentation was unacceptable. *Id*. at ¶ 30. "Markaline [] demanded that [Eubanks] produce an updated medical note justifying the medical exemption to the vaccination," and gave Eubanks five days to provide the information or risk termination. *Id*. at ¶¶ 31-34. Eubanks's doctor immediately faxed Mercy a note explaining that Eubanks "has unknown allergic reactions unknown etiology. Currently do not recommend a flu shot." *Id*. at ¶ 35.

On November 28, 2012, Chip Hatchell, Mercy's infectious
disease supervisor, emailed Eubanks, informing her that her
medical documentation was still insufficient to be exempt from
the vaccine.  Compl. at ¶¶ 36-37.  "Hatchell demanded that
[Eubanks]'s doctors delineate in greater detail exactly how
[Eubanks] would react physically if she received the influenza
vaccination," or Eubanks would be terminated for failing to
receive the vaccine.  *Id*. at ¶¶ 38-39.  On November 29, 2012,
Eubanks contacted her doctor's office, but was informed "that
the doctor would be out of the office on an extended vacation,
and that the information already provided was all that would be
provided and was medically reasonable and necessary."  *Id*. at ¶¶
40-42.

On December 4, 2012, Eubanks "filed a charge of
discrimination with the Maryland Commission on Civil Rights and
the Equal Employment Opportunity Commission, alleging
discrimination on the basis of disability for failing to provide
a reasonable accommodation, and for discharge."  Compl. at ¶ 43.
Eubanks also contacted Mercy's human resources department and
was referred to "Andrew."  *Id*. at ¶¶ 44-45.  Eubanks left
messages for Andrew, but never received a return call.  *Id*. at ¶
47.  Human Resources also "refused [Eubanks's] repeated
requests to file a complaint or grievance regarding the refusal

to accommodate her medical condition and the unreasonable and discriminatory conditions placed on her." *Id.* at ¶ 46.

On December 5, 2012, Eubanks "went to the emergency room of St. Joseph's Medical Center complaining of anxiety, sinusitis, rhinosinusitis, chest, neck and back pain." Compl. at ¶ 48. Eubanks "was discharged with instructions to take over the counter medications and to follow up with her family physician." *Id.* On December 6, 2012, Eubanks went to Patient First in Lutherville "complaining of headache, back pain, neck pain, left eye blurry vision, possibly related to sinus issues." *Id.* at ¶ 49. Patient First determined that the symptoms were due to Eubanks's allergies and provided her with "an out of work slip from December 6, 2012 through December 8, 2012," which Eubanks submitted to Markaline. *Id.* at ¶¶ 50-51.

On December 10, 2014, Eubanks received "a threatening phone call" from Hatchell requesting "additional medical documentation." Compl. at ¶ 52. Eubanks "explained to Hatchell that the etiology of her allergic reaction to the vaccination was unclear because she was advised against getting the shot just to find out how severe her reaction could be." *Id.* at ¶ 53. Her doctor had informed Eubanks "that, among other things, [she] was allergic to eggs, which is contained in the vaccine." *Id.* at ¶ 54. Eubanks "forward to Hatchell all of her

6

prior medical records on her allergies, including those from her

[] allergist, Dr. Wright." *Id.* at ¶ 55.

On December 12, 2012, Hatchell and Tina Gervasio, Mercy's

infectious disease manager, contacted Eubanks.  Compl. at ¶ 56.

They informed Eubanks that her medical documentation "was still

not sufficient and that without documentation specifying the

type and severity of her reaction to the vaccination, she would

be terminated." *Id.* at ¶ 57.  On December 11, 2012, Eubanks

provided another note from her doctor "regarding her allergies

and the vaccination." *Id.* at ¶ 58.  Because Eubanks's current

allergist was retiring, the doctor's note "asked that [Eubanks]

be allowed additional time in which to find an allergist in

order to undergo a repeat allergy test." *Id.* at ¶ 60.  Eubanks

was also suffering from "severe muscle spasm[s] and anxiety

attacks brought on by Mercy's treatment of [her]." *Id.* at ¶

59.

On December 12, 2012, Eubanks's doctor "sent a detailed

explanation of why it was medically necessary to avoid having

[Eubanks] exposed to the vaccination," including:

> The above noted individual has a history of severe
> allergies.  She has seen an allergist who is closing
> his practice.  In his documentation, he noted to avoid
> eggs.  At this time, we are recommending that she
> forgo the flu vaccine until she sees another allergist
> to make his determination.  CDC clearly states no flu
> vaccine to patient with egg allergies.  Please allow
> this individual enough time to contact another
> allergist to be tested.

Compl. at ¶ 62.  On December 13, 2012, Hatchell informed Eubanks
that the documentation was insufficient.  *Id.* at ¶ 63.

On January 9, 2012, Hatchell told Eubanks "that she had
until January 23, 2013 in which to provide the new allergist's
report or she would be terminated."  *Id.* at ¶ 67.  Eubanks
informed Hatchell "that this was not enough time to allow for a
scheduled visit to an allergist, especially since she would be
considered a new patient and would require a block of time to be
set aside by the allergist, with lengthy testing done . . . ."
*Id.* at ¶ 68.

On January 16, 2013, Eubanks's son was suffering from
severe abdominal pain, and she had to miss work to take him to
the emergency room.  Compl. at ¶ 70.  Eubanks gave Markaline
medical documentation supporting her absence.  Id.  On January
25, 2013, Markaline called Eubanks into her office.  Id. at ¶
71.  Andrew from human resources was also present.  Id.  Andrew
told Eubanks that she was being terminated for "attendance
issues."  Id. at ¶ 73.  Eubanks explained that her "last few
absences (except for the emergency room visit for her son) were
caused by Mercy's insistence on additional medical documentation
regarding the vaccination."  Id. at ¶ 74.  "Despite her
explanations, [Eubanks] was terminated and told to exit the
premises."  *Id.* at ¶ 76.

On December 1, 2014, Eubanks received a right to sue letter from the Equal Employment Opportunity Commission.  Compl. at ¶ 7.  On January 22, 2015, Eubanks sued Mercy in the Circuit Court for Baltimore City.  ECF No. 1 at 1.  The complaint alleged discrimination under the Maryland Fair Employment Practice Act ("FEPA")[5] and the ADA.  Compl. at ¶¶ 77-96.  On February 23, 2015, Mercy removed the case to this court.  ECF No. 1.

On March 2, 2015, Mercy moved to dismiss the complaint for failure to state a claim upon which relief can be granted.  ECF No. 8.  On March 24, 2015, Eubanks opposed the motion.  ECF No. 133.  On April 17, 2015, Mercy replied.  ECF No. 16.

II. Analysis

A.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l*,

---

[5] Md. Code Ann., State Gov't § 20-601.

*Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's
notice-pleading requirements are "not onerous," Eubanks must
allege facts that support each element of the claim advanced.
*Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th
Cir. 2003).  These facts must be sufficient to "state a claim to
relief that is plausible on its face."  *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570 (2007).

This requires that Eubanks do more than "plead[] facts that
are 'merely consistent with a defendant's liability;'" the facts
pled must "allow[] the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*,
550 U.S. at 557).  The complaint must not only allege but also
"show" that Eubanks is entitled to relief.  *Id.* at 679 (internal
quotation marks omitted).  "Whe[n] the well-pleaded facts do not
permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged--but it has not shown--
that the pleader is entitled to relief."  *Id.* (internal
quotation marks and alteration omitted).

B.   ADA Claims

Mercy argues that the complaint fails to establish that
Eubanks suffered from a "disability" within the meaning of the
ADA.  *See* ECF No. 8-1 at 8.

The ADA makes it unlawful for employers to "discriminate against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a).  A qualified individual is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.  42 U.S.C. § 12111(8).  A disability is either "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment."  42 U.S.C. § 12102(1).

In *Toyota Motor Manufacturing, Kentucky Inc. v. Williams*, 534 U.S. 184, 199 (2002), the Supreme Court adopted a strict construction of disability.  The Court also stated that a temporary impairment did not qualify as a disability under the ADA.  *Id*.

In September 2008, Congress amended the ADA to overturn the Supreme Court's *Toyota* ruling.  *See Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 329 (4th Cir. 2014).  Congress sought to "reinstat[e] a broad scope of protection . . . available under the ADA."  Pub. L. No. 110-325, 122 Stat. 3553.  "[T]he amended Act provides that the definition of disability 'shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted . . . .'"  *Summers*, 740 F.3d at 329 (quoting 42 U.S.C. § 12102(4)(A)).  The term

11

"substantially limits" is also to be interpreted liberally in accordance with this purpose. 42 U.S.C. § 12102(4)(B).

The EEOC subsequently revised its regulations to reflect the amendments. EEOC regulations state that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage" and is "not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). The "effects of an impairment lasting or expected to last fewer than six months *can be substantially limiting . . . ."* 29 C.F.R. § 1630.2(j)(1)(ix). Instead of classifying all short term impairments as non disabilities, courts should look at duration as simply "one factor that is relevant in determining whether the impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(1)(ix) (app.). "[I]f an individual has a back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability." *Id.*

Although the scope of "disability" under the ADA should be interpreted broadly,[6] it is not without limit. *See Feldman v.*

---

[6] *See Summers*, 740 F.3d at 330 ("If, as the EEOC has concluded, a person who cannot lift more than twenty pounds for 'several months' is sufficiently impaired to be disabled within the meaning of the amended Act, then surely a person whose broken legs and injured tendons render him completely immobile for more than seven months is also disabled."; *Johnson v. Balt. Cty.*

*Law Enforcement Associates Corp.*, 955 F. Supp. 2d 528, 539

(E.D.N.C. 2013) *aff'd*, 752 F.3d 339 (4th Cir. 2014)

("Nevertheless, '[w]hile Congress undoubtedly intended to

broaden the scope of the ADA . . ., it remains the case that

'not every impairment will constitute a disability . . .'"

(quoting Brandon v. O'Mara, 2011 WL 4478492, at *7 (S.D.N.Y.

Sept. 28, 2011)); *cf.* 29 C.F.R. § 1630.2(j)(1)(ix) (app.)

(whether a short-term disability is substantially severe is a

factual analysis based on multiple factors).  Courts in the

Fourth Circuit have held that allegations are insufficient to

support a claim under the ADA when they contain no facts showing

that the impairment substantially limited a major life

activity.[7]

---

*Police Dep't*, No. ELH-12-2519, 2014 U.S. Dist. LEXIS 41669, at
*43-49 (D. Md. Mar. 27, 2014) (woman who suffered from back
problems and had a hysterectomy stated a disability); *Todd v.
Prince George's Cnty.*, RWT 13cv1776, 2014 U.S. Dist. LEXIS
39815, at *15-17 (D. Md. Mar. 26, 2014) (plaintiff who was on
crutches and in a walking boot three years after her injury was
"disabled").

[7] *See Feldman*, 955 F. Supp. 2d at 528, 539 ("Here, Feldman has
not offered any evidence beyond his overnight visit to the
hospital to show that the TIA substantially impaired the major
life activity of working or any other major life activity."); *see
also Quarles v. Md. Dep't of Human Res.*, 2014 WL 6941336, at *3-
4 (D. Md. Dec. 5, 2014) ("The SAC lacks specific factual
allegations regarding the type of diabetes from which Quarles
suffers, the degree to which the diabetes limits her movement,
or how her diabetes otherwise affects her life.  The SAC does not
state that Quarles's diabetes '*substantially* limits' her ability
to walk, rather than merely 'limit[ing]' that ability."); *Taylor v. Federal Express Corp.*, 429 F.3d 461, 464 (4th Cir.

Here, the complaint contains no information about how
Eubanks's allergies substantially limited a major life
activity.[8]  In her opposition, Eubanks argues that "major life
activity" includes "the functions of the immune system."  ECF
No. 13-2 at 4 (quoting 42 U.S.C. § 12102(2)(B)).  Thus, "[b]y
the very definition of her diagnosis, [Eubanks's] immune system
is impaired."  *Id.*  Eubanks's argument expands the definition of
disability under the ADA.  Under her analysis, any illness that
affects the immune system, no matter how brief or severe, would

2005) ("[To] be substantially limited in the major life activity
of working  . . . one must be precluded from more than one type
of job, a specialized job, or a particular job of choice . . .
[and] if jobs utilizing an individual's skills . . . are
available, one is not precluded from a substantial class of
jobs."); *Allen v. SouthCrest Hosp.*, 455 Fed. App'x. 827, 835
(10th Cir. 2011) (finding that the plaintiff, "even after the
enactment of the [ADA Amendments Act of 2008] and the modified
EEOC regulations" must show that she was "substantially limited
in performing a class of jobs or broad range of jobs" in order
to establish that she is substantially limited in the major life
activity of working).

[8] "An impairment that is episodic or in remission is a
disability if it would substantially limit a major life activity
when active."  42 U.S.C. § 12102(4)(D); 29 C.F.R. §
1630.2(j)(vii).  A plaintiff, however, must still provide the
factual allegations necessary to show not only that the
impairment is chronic, but that it substantially limits a major
activity.  *See Clay v. Campbell Cnty. Sheriff's Office*, 2013 WL
3245153, at *3 (W.D. Va. June 26, 2013) (plaintiff with kidney
stones "failed to adequately allege that he has a physical
impairment that 'substantially limits' any major life activity.
. . . to hold otherwise would mean that anyone who became ill
and had to miss work for a period of time would suffer from a
'disability' under the ADA").

qualify as a disability.  Moreover, the ADA requires that the impairment not just limit a major life activity in some manner, it must *substantially* limit the activity.  *See Clay*, 2013 WL 3245153, at *3.

Eubanks also asserts that she did provide specific facts supporting the substantial limitation of a major life activity. ECF No. 13-2 at 5.  In support of this argument, Eubanks lists all of the *possible* risks and symptoms of severe allergies.  *Id.* These risks were contained in a doctor's note provided to Eubanks when she first visited the doctor for her allergies. *See* Compl. at ¶¶ 13-14.  Nowhere does the complaint state that Eubanks actually had any of these symptoms.  *See id.*  In the end, the complaint only contains two instances in which Eubanks had to miss a day of work to go to the doctor because of her allergies; this is not sufficient to state a claim.  *See Clay*, 2013 WL 3245153, at *3.

The Court recognizes, however, that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."  42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(j)(vii).  Thus, if Eubanks can supply facts showing that her allergies *in fact* limited a major life activity, she has stated a disability under the ADA.  Accordingly, the Court will dismiss the claim without prejudice and provide Eubanks with 30 days in which to amend her

complaint.[9]  If Eubanks fails to amend the complaint in that time, the case will be dismissed with prejudice.

    C.   State Law Claim

    Under Maryland law, a disability is "a physical disability, infirmity, malformation, or disfigurement that is caused by bodily injury, birth defect, or illness, including epilepsy; or . . . a record of having a physical or mental impairment as otherwise defined under this subsection; or being regarded as having a physical or mental impairment as otherwise defined under this subsection."  Md. Code Ann., State Gov't § 20-601(b)(1).  "Disability" includes "any degree of paralysis, amputation, or lack of physical coordination; blindness or visual impairment; deafness or hearing impairment; muteness or speech impediment; [] physical reliance on a service animal, wheelchair, or other remedial appliance or device; and retardation and any other mental impairment or deficiency that may have necessitated remedial or special education and related services."  *Id.* at § 20-601(b)(2).

---

[9] Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice requires.  Leave should be denied only when amendment would unduly prejudice the opposing party, amount to futility, or reward the movant's bad faith.  *See Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010).

The Maryland FEPA is the state law analogue to the federal discrimination statutes, and Maryland courts "traditionally seek guidance from federal cases in interpreting Maryland's [FEPA]." *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007); *see also Claire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 598-99 (D. Md. 2013) ("As to Maryland law claims alleging violations of State Government Article § 20-601 *et seq.*, this Court has recognized that the definitions of 'qualified individual with a disability' under the ADA and the Code of Maryland Regulations § 14.03.02.02(B)(10) are nearly identical.") (quotation omitted); *Lewis v. Univ. of Md., Balt.*, 2012 WL 5193820, at *4 n. 3 (D. Md. Oct. 18, 2012) ("Maryland courts have used interpretations of the ADA for guidance when the ADA is substantially similar to the Maryland code at issue."). Accordingly, for the reasons Eubanks's ADA allegations fail to state a claim, the Court will dismiss Eubanks's FEPA claim.[10]

III. Conclusion

For the reasons stated above, Mercy's motion to dismiss will be granted.

_12/17/15_____
Date

_Syle L_____
William D. Quarles, Jr.
United States District Judge

---

[10] As with the federal claim, Eubanks will be granted 30 days to amend her complaint.